ENTERED

AUG 0 1 2007

N H

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF SOUTH CAROLINA

FILED
at____O'clock &____min.____M

JUL 3 1 2007

United States Bankruptcy Court
Columbia, South Carolina (13)

IN RE:

Veronica C. Workman,

Debtor(s).

C/A No. 06-04513-JW

Chapter 13

ORDER

This matter comes before the Court on objection by Veronica C. Workman ("Debtor") to the amended claim of Harris Trust and Savings Bank ("Harris Trust").[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O). Pursuant to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052, the Court makes the following Findings of Fact and Conclusions of Law.[2]

## FINDINGS OF FACT

1.     Debtor commenced this case on October 9, 2006 by filing a petition under chapter 13 of the Bankruptcy Code.

2.     Harris Trust holds a claim secured by a first priority security interest in Debtor's principal residence.

3.     Debtor filed a chapter 13 plan contemporaneous with her petition. Debtor's plan proposed to make payments of $1,050.00 per month for sixty months. Debtor's proposed plan payment equals her actual disposable income reflected on her Schedule J.[3] The plan proposed to

---

[1]     Harris Trust is also identified in its proof of claim and in Debtor's chapter 13 plan as Ocwen Loan Servicing, LLC.
[2]     To the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are also adopted as such.
[3]     Debtor is a below the median income debtor for the State of South Carolina and therefore did not complete Form B22C, to the extent that this form bears on determining a debtor's projected disposable income. See In re Edmunds, 350 B.R. 636, 647-649 (Bankr. D.S.C. 2006).

cure arrearage, estimated at $30,000.00,[4] owed to Harris Trust by making payments of $500.00 per month for the duration of Debtor's plan.

4.  On October 16, 2006, Harris Trust timely filed its first proof of claim. Harris Trust's claim indicates that it is secured by Debtor's residence and that its claim was $82,831.27 at the time of Debtor's petition. The claim further states that the arrearage owed on the claim was $25,142.36. Attached to the proof of claim was an itemization of the amounts owed by Debtor although this itemization does not clearly indicate Harris Trust's method for calculating its arrearage claim.[5]

5.  On October 30, 2006, Harris Trust filed an objection to Debtor's chapter 13 plan on grounds that: 1) the plan impermissibly modified the rights of Harris Trust since the duration of the plan extended past the maturity date of Debtor's loan with Harris Trust and 2) the Plan failed to pay the allowed amount of Harris' Trust's secured claim.

6.  In response to Harris Trust's objection and in light of the proof of claim filed by Harris Trust, Debtor filed an amended chapter 13 plan on December 12, 2006 (the "Plan"). The Plan again proposes to make payments of $1,050.00 for sixty months but accelerates payments to Harris Trust by providing that the arrearage claim of Harris Trust would be cured by April 2011, the maturity date of Debtor's loan with Harris Trust. The Plan proposed to cure the arrearage owed to Harris Trust by making payments of $465.00 per month based upon Harris Trust's proof of claim.

---

[4] Debtor testified that Harris Trust advised her prior to the petition date that the arrearage owed to Harris Trust was $30,000.00.

[5] It appears from the itemization that Harris Trust determined its arrearage claim based, to a large extent, upon certain late charges, escrow advances, and property preservation expenses.

2

7.      Harris Trust voluntarily withdrew it objection to confirmation on December 13, 2006 and asserted in the withdrawal that "[a]n amended chapter 13 plan was filed December 12, 2006, which resolves all issues raised in the objection."

8.      The Plan, as amended, was confirmed on December 20, 2006 without further objection from Harris Trust.

9.      On May 16, 2007, Harris Trust amended its proof of claim. The amended proof of claim asserts that Debtor owes arrearage in the amount of $35,221.08, which appears to include interest and late charges not previously asserted in Harris Trust's calculation of arrearage in its first proof of claim.

10.     Debtor objected to Harris Trust's amendment to its proof of claim and argued that Harris Trust had multiple opportunities to correct is claim but failed to do so. Debtor testified that she is current in her payments to Harris Trust and to the chapter 13 trustee for her Plan but that she would be unable to continue to make payments under the Plan if the amended proof of claim is allowed at this juncture in her case. Debtor further testified that she may have chosen not to keep her residence if Harris Trust had correctly represented the amount of the arrearage in its initial proof of claim.

## CONCLUSIONS OF LAW

I.      **Harris Trust's Right to Amend a Timely Filed Proof of Claim**

Creditors are invited by 11 U.S.C. § 501 to file a proof of claim. The Bankruptcy Code and Rules do not require secured creditors to file a claim; however, the filing of a claim is a necessary step in a chapter 13 case if the creditor desires to receive a distribution from a debtor's chapter 13 plan. See In re Brunson, C/A No. 04-08574-W, slip op. (Bankr. D.S.C. Aug. 2, 2005) (finding a creditor could not receive a distribution from a chapter 13 case because no timely

3

proof of claim was filed). A proof of claim filed in accordance with Fed. R. Bankr. P. 3001 is *prima facie* evidence of the validity and the amount of the claim. See Fed. R. Bankr. P. 3001(f). This court and others have allowed creditors to amend timely filed proofs of claim when the amendment is in the interest of justice. See In re Enron Corp., 419 F.3d 115, 133 (2nd Cir. 2005) (citing Fed. R. Bankr. P. 7015 and cases from other circuit courts holding that creditors may amend in certain circumstances); In re Mitchum, C/A No. 02-07573-W, slip op. (Bankr. D.S.C. Aug. 25, 2004). "An amendment to a timely filed claim should be freely allowed when the purpose of the amendment is to cure a defect in the claim as originally filed or to describe the claim with greater particularity." Mitchum, slip op. at 4 (citations omitted). Deciding whether to allow an amendment to a proof of claim is within the sound discretion of this Court. See Mitchum, slip op. at 4.

The right of a creditor to amend a timely claim is not unlimited. For instance, amendment is not allowed if the amended claim is actually a new claim filed under the guise of an amendment. See Miller v. ChanneLinx, Inc. (In re ChanneLinx, Inc.), 317 B.R. 694, 699 (Bankr. D.S.C. 2004). Amendment is also not allowed if it will result in undue prejudice to the debtor or to the estate. See Mitchum, slip op. at 4, In re C.P.M. Const., 124 B.R. 335, 338 (Bankr. D.N.M. 1991). A secured creditor can also waive its rights by filing an incorrect claim. See In re Taylor, 280 B.R. 711, 716 (Bankr. S.D. Ala. 2001) (holding a creditor with a first mortgage on a debtor's principal residence waived its right to be paid as a secured creditor by filing its claim as unsecured and could not later amend the timely claim to reflect that it is secured). See also Maxwell v. McDaniels, 195 F. 426, 428-429 (4th Cir. 1912) (holding, under the Bankruptcy Act, that a creditor who files a claim as an unsecured claim may waive or release his security by failing to assert its rights).

4

Examining the facts of this case, it is evident that the amended claim by Harris Trust is not a new claim. The amended claim arises out of the same operative set of facts as the original claim and therefore the Court will not deny the amendment on grounds that the amended claim is a new claim. Therefore, the Court must determine whether Harris Trust's right to amend has been waived or will otherwise result in unfair prejudice to Debtor or her estate.

## II.    Harris Trust Waived its Right to Amend its Proof of Claim

Bankruptcy courts have held that a creditor may waive any right to which it is entitled, including rights secured by a contract. See Dooley v. Weil (In re Garfinkle), 672 F.2d 1340, 1347 (11th Cir. 1982), Taylor, 260 B.R. at 716. Waiver may be found where a party voluntarily relinquishes a known right or claim. See In re Varat Enterprises, Inc., 81 F.3d 1310, 1317 (4th Cir. 1996), McGuffin v. Barman (In re BHB Enterprises, LLC), C/A No. 97-01975-W; Adv. Pro. No. 97-80227-W, slip op. at 10, 1997 WL 33344249 (Bankr. D.S.C. Aug. 27, 1997). Waiver is a unilateral act and therefore does not require detrimental reliance. See In re K-Com Micrographics, Inc., 159 B.R. 61, 67 (Bankr. D.D.C. 1993). A waiver also does not require consideration to be valid and may be either expressed or implied. See South Carolina Tax Comm'n v. Metropolitan Life Ins. Co., 266 S.C. 34, 40, 221 S.E.2d 522, 524 (S.C. 1975), Lyles v. BMI, Inc., 292 S.C. 153, 158, 355 S.E.2d 282, 285 (S.C. Ct. App. 1987). Consequently, acts inconsistent with the continued assertion of a right, such as a failure to insist upon the right, may constitute waiver. See Bonnette v. State, 277 S.C. 17, 18, 282 S.E.2d 597, 598 (S.C. 1981).

In a similar case, the bankruptcy court for the Southern District of Alabama sustained a debtor's objection to a mortgage creditor's amended proof of claim where the creditor attempted to amend its claim after confirmation to reflect it was secured. See Taylor, 280 B.R. at 715-716. The court held that, notwithstanding the creditor's status as a first priority mortgage creditor, a

5

creditor can waive its right to be paid as a secured creditor by filing an incorrect claim relied upon by the debtor.[6] See id. at 716. Waiver of the right to amend a claim may also be found where a creditor actively participated in the confirmation process and failed to give adequate notice that it had an additional claim. See In re New River Shipyard, Inc., 355 B.R. 894, 910 (Bankr. S.D. Fla. 2006).

In this case, Harris Trust incorrectly stated the amount of Debtor's arrearage on its original proof of claim. Though the attachment to the proof of claim itemized the debt owed to Harris Trust, the itemization did not provide a clear indication of Harris Trust's intent to hold the estate liable for arrearage in excess of the amount appearing on the face of the proof of claim but rather the attachment only clearly indicated the amount of its claim. Harris Trust also should have been aware of any error in its claim based upon its receipt of several distributions from the chapter 13 trustee, which paid Harris Trust according to the claim that it now contends is incorrect. Further, Harris Trust actively participated in the confirmation process by insisting that its claim be paid off before the final payment due under the plan, notwithstanding Debtor's right to extend the cure period pursuant to 11 U.S.C. § 1322(c)(2). See In re Witt, 113 F.3d 508, 512 (4th Cir. 1997) (holding that payment to an undersecured home mortgage creditor may be stretched out over the life of the plan even though the final payment to the creditor is due before the end of the term of the chapter 13 plan). Finally, Harris Trust's objection asserted that the plan did not pay its allowed secured claim. Upon Debtor amending her Plan, Harris Trust voluntarily withdrew its objection to confirmation, asserting that all issues raised in the

---

[6] Notably, the Taylor court also found that the chapter 13 plan did not violate 11 U.S.C. § 1322's anti-modification provision because the chapter 13 plan paid the creditor exactly as the creditor had filed the claim. See Taylor, 280 B.R. at 714. Such a holding appears to be consistent with Fourth Circuit case law holding that certain rights, which may otherwise require an adversary proceeding for final adjudication, may be waived and determined within the context of a contested matter. See In re County Fuel Co., Inc., 832 F.2d 290, 293 (4th Cir. 1987). Harris Trust did not argue that the Plan violated 11 U.S.C. § 1322(b)(2) and therefore the Court will not address the issue in this Order.

objection, including whether the Plan paid its secured claim, were resolved by the amended Plan and thereby allowed the Plan to be confirmed.[7] See Varat, 81 F.3d at 1318 (holding that creditors bear the burden of policing a plan's treatment of claims). The confirmed Plan provided for a specific treatment of Harris Trust's claim and clear notice to Harris Trust that all arrearage would be cured through payments of $465.00 per month until April, 2011. The Plan is therefore afforded *res judicata* effect and this doctrine, along with the doctrine of waiver, prevents Harris Trust from now seeking to alter its bargained for position. See 11 U.S.C. § 1327, In re Durham, 260 B.R. 383, 386 (Bankr. D.S.C. 2001) (holding "[c]onfirmation is the bright line in the life of a Chapter 13 case at which all the important rights of creditors and responsibilities of the debtor are defined and after which all rights and remedies must be determined with reference to the plan.").

The foregoing facts indicate that Harris Trust was aware of its claim against Debtor but nevertheless engaged in a pattern to knowingly and voluntarily relinquish its right to additional arrearage. Harris Trust bargained for and received treatment pursuant to a chapter 13 plan that paid its claim as filed. The doctrine of waiver prevents Harris Trust from now attempting to amend its claim to assert a claim for additional arrearage and other charges not clearly evident on the face of its original proof of claim. See Taylor, 280 B.R. at 716.

### III. Harris Trust's Amended Claim Would Cause Undue Prejudice

Though Fed. R. Civ. P. 15 is not made applicable to the claims allowance process by Fed. R. Bankr. P. 9014, many bankruptcy courts have analyzed an objection to amended claim using a Rule 15 standard. See Enron Corp., 419 F.3d at 133, In re Trans World Airlines, Inc., 145 F.3d

---

[7] Harris Trust argued at the hearing on Debtor's objection to its amended claim that its objection to Debtor's original plan was only based upon the maturity date of its note; however, the objection itself put at issue whether the plan paid Harris Trust's allowed secured claim. Debtor's amended Plan was responsive to this objection and proposed to pay Harris Trust in the exact amount stated on its claim.

7

124, 141 (3d Cir.1998) (noting that Fed. R. Bankr. P. 7015 leaves to the bankruptcy court's discretion the decision to grant or deny leave to amend claims); In re Stavriotis, 977 F.2d 1202, 1204 (7th Cir.1992) (same). See also, In re Anderson, C/A No. 05-07387-DD, slip op. (Bankr. D.S.C. Nov. 13, 2006) (holding that motions may be amended though Fed. R. Civ. P. 15 does not apply to contested matters). Under Rule 15, leave to amend is freely granted absent undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment. See Pittston Co. v. U.S., 199 F.3d 694, 705 (4th Cir. 1999). This Court and other courts within this Circuit have previously cited undue prejudice as grounds to deny an amendment to a timely filed proof of claim. See Mitchum, slip op. at 4; In re Mitchell, 116 B.R. 63 (Bankr. W.D. Va. 1990); In re Vlavianos, 71 B.R. 789 (Bankr. W.D. Va. 1986). Undue prejudice requires something more than requiring a debtor to pay a claim but may be demonstrated through evidence that allowance of the amended claim would interfere with the orderly distribution to other creditors. See Mitchum, slip op. at 5; In re JSJF Corp., 344 B.R. 94, 102 (9th Cir. BAP 2006).

The Court finds that allowance of Harris Trust's amended claim would result in undue prejudice for Debtor and her estate.[8] Based upon Debtor's testimony and schedules, it is evident that Debtor lacks the ability to cure the arrearage at this point in her chapter 13 plan thus causing the Plan to fail.[9] Unlike the cases of In re Keys, 64 B.R. 786 (Bankr. M.D. Tenn. 1986) and In re McMillan, 182 B.R. 11 (Bankr. E.D. Pa. 1995), the amended claim correcting the arrearage

---

[8] Unlike the recent case of In re Sawyer, C/A No. 06-03762-W, slip op. (Bankr. D.S.C. Jul. 10, 2007) (finding no undue prejudice), there is no evidence in this case that Harris Trust was denied due process and it is evident from Debtor's schedules and the statements of the chapter 13 trustee that this case will fail if the amended claim is allowed.

[9] The chapter 13 trustee also stated on the record that Debtor's plan payment would likely increase by $200.00 or more per month, which does not appear feasible at this point in Debtor's chapter 13 case given Debtor's income and budget.

amount in this case was made months after the original claim was filed and would result in Debtor being unable to continue in this case. Allowance of the amended claim would therefore interfere with the orderly distribution of Debtor's assets to the prejudice of Debtor, who relied on the original claim in formulating and performing under the Plan, and to the prejudice of her other creditors, who are currently receiving a distribution under a confirmed chapter 13 plan in excess of any distribution they would receive in a liquidation of Debtor's property. See Keys, 64 B.R. at 790 (noting that debtor's expectations were not dramatically upset by the amended claim correcting the arrearage); McMillan, 182 B.R. at 14 (noting a lack of prejudice where the claim was amended to reflect arrearage one month after the original claim was filed). Additionally, Debtor testified that she may not have retained the property if Harris Trust correctly represented the arrearage in its original proof of claim. Relying on the original claim, Debtor proposed a plan that has since paid thousands of dollars to Harris Trust to cure the arrearage on a piece of property with substantial negative equity.[10] According to Debtor, a correct representation of the arrearage would have resulted in Debtor abandoning the property and using her resources to build equity in another residence rather than attempting to cure a considerable debt on her over-encumbered residence. Debtor has lost opportunity and resources as a result of Harris Trust's original proof of claim and the Court therefore finds the foregoing is sufficient prejudice, under the facts of this case, to sustain Debtor's objection to Harris Trust's amended proof of claim. See In re Carmelo Bambace, Inc., 134 B.R. 125, 130 (Bankr. S.D.N.Y. 1991) (disallowing an amended claim in a chapter 11 where the amended claim was made after confirmation and would substantially affect the plan and prejudice the creditors that had accepted the plan based upon the original proof of claim).

---

[10] Harris Trust's original proof of claim indicates that Debtor owes $14,331.27 more than the value of the residence.

9

## CONCLUSION

Based upon the foregoing, Debtor's objection to the amended claim of Harris Trust is sustained. Harris Trust has an allowed secured claim, as originally filed on October 16, 2006, in the amount of $82,831.27 with $25,142.36 representing the total allowed amount of Harris Trust's arrearage claim.

**AND IT IS SO ORDERED.**

_____
UNITED STATES BANKRUPTCY JUDGE

Columbia, South Carolina
July 31, 2007

10